# Exhibit 9



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

# CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached Western High Court Ruling of November 25, 1999, Section 6, B-2838-97. I further certify that I am fluent in both Danish and English, and qualified to translate from Danish to English. My qualifications include 14 years of experience as a freelance translator as well as 4 years of experience as an in-house translator and editor.

Anna-Rebecca Hutt, Contract Attorney

Licensed in DC and Texas only

On the 6 day of June in the year 2022, before me, the undersigned notary public, personally appeared Anna-Rebecca Hutt, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____ Notary Public



Western High Court Ruling of November 25, 1999, Section 6, B-2838-97Certification.docx

# Capital gains taxation

Prior Instance: Western High Court Judgment of November 25, 1999, Section 6, B-2838-97

**Western Hight Court Judgment**
of November 25, 1999
Section 6, B-2838-97

**Parties:**

K1
and
K2
(attorney A1, K-by)
against

Ministry of Taxation
(Kammeradvokaten)

**Decided by the judges:**

3 judges

On August 27, 1997, the National Tax Tribunal issued the following ruling concerning the determination of the claimant's income for K1 in the 1994 income year:

"...

The complaint concerns the calculation of income for the following points:

| The 1994 income year | | |
|---|---|---|
| Share income | | |
| Non-approved deduction for self-declared share loss | | DKK 1,467,926 |
| The income is simultaneously increased with calculated gains for shares owned more than 3 years | | DKK 33,912 |
| Capital income | | |
| The income is simultaneously increased with calculated gains for shares owned less than 3 years | | DKK 53,364 |

The claimant, together with K2, K3 and F1 Ltd., founded F2 Ltd. (hereinafter referred to as "F2") on July 1, 1990. K3 and K2 are the claimant's brothers. Each of the brothers owned 1/3 of F1 Ltd.

The paid-in capital in F2 had the nominal value of DKK 90,000 and was broken down between the nominal value of DKK 24,000 for F1 Ltd., and the nominal value of DKK 22,000 for the three brothers, as the capital was paid-in at the price of 100.

The presented balance sheet of December 31, 1993, for F2 shows that the company's equity as of December 31, 1992, was negative by DKK 1,644,685 and as of December 31, 1993, was negative by DKK 2,794,784.

It is also stated that the claimant as per December 31, 1993, had a receivable in F2 of DKK 1,555,202.

On September 1, 1994, K3 transferred shares worth the nominal value of DKK 10,000 to the claimant, while also disposing his remaining shares with the nominal value of DKK 12,000 to K2. F1 Ltd. also transferred its shares in F2 with the nominal value of DKK 24,000 to the claimant. All shares were transferred at the price of 0.

On September 30, 1994, F2 held an extraordinary general meeting, whereby the company's capital was increased by the nominal value of DKK 1,000. The increase took place at the price of DKK 260,000 and, according to the agreement, was to be made by cash payment for a total of DKK 2,600,000. The existing shareholders, i.e., the claimant and K2, had proportional pre-emptive rights in the shares and these nominal values were thus subscribed:

| Claimant: | DKK 620 |
|---|---|
| K2: | DKK 380 |

Following the capital injection, F2's paid-in capital was thus broken down as follows:

| Claimant: | DKK 56,620 |
|---|---|
| K2: | DKK 34,380 |

The claimant thus had to pay-in DKK 1,612,000 due to the capital increase. The claimant made the payment with the value date of October 31, 1994 and financed it by borrowing from his financial institution.

With the value date of December 20, 1994, F2 paid the claimant's receivable, DKK 1,555,202 to the claimant.

By agreement of December 28, 1994, the claimant and K2 sold all their shares in F2 to K2 Inc. K2 Inc. was a company owned by the three brothers and their father, K4. The agreed-to transfer sum was DKK 267,000 and was broken down to DKK 166,074 to the claimant and DKK 100,926 to K2.

The claimant has by filing his self-declaration for the 1994 income year deducted a loss of DKK 1,467,926 from his F2 share income.

The self-declared loss thus shows:

| Purchase of shares July 1, 1990, nominal value of DKK 22,000 at a price of 100 | | DKK 22,000 |
|---|---|---|
| Purchase of shares September 1, 1990, nominal value of DKK 34,000 at a price of 0 | | DKK 0 |
| Share increase October 31, 1994, nominal value DKK 620 at a price of 260,000 | | DKK 1,612,000 |
| Total acquisition sum | | DKK 1,634,000 |
| Total disposition sum | | DKK 166,074 |
| Total loss | | DKK 1,467,926 |

At the time of the appeal of the assessment, the local authorities had not approved the self-declared share loss of DKK 1,467.926. The authorities have instead increased the claimant's share income by DKK 33,912 for shares owned more than 3 years and increased the claimant's capital income by DKK 53,364 for shares owned for less than 3 years. Reference is made to the Danish Capital Gains Tax Act §§ 2, 4 and 5.

| The authorities' capital gains statement shows the following: |
|---|

| | |
|---|---:|
| Purchase of shares July 1,1990, nominal value of DKK 22,000 at a price of 100 | DKK 22,000 |
| Purchase of shares September 1, 1994, nominal value DKK 34,000 at a price of 0 | DKK 0 |
| Capital increase October 30, 1994, nominal value of DKK 620 for the paid amount, less the claimant's receivable, which was redeemed (DKK 1,612,000 - DKK 1,555,202) | DKK 56,798 |
| Total acquisition sum for all shares | DKK 78,798 |
| Total disposition price | DKK 166,074 |
| Profit | DKK 87,276 |
| that is broken down as such: | |
| For shares owned less than three years:<br>34,620/56,620 x DKK 87,276 | DKK 53,364 |
| taxed as income from capital | |
| For shares owned more than 3 years:<br>22,000/56,620 x DKK 87,276 | DKK 33,912 |
| taxed as share income | |

The authorities have i.a. stated that the undertaken capital increase cannot be regarded as cash based, but must in fact be regarded as a debt conversion, in that the claimant, by proceeding in the way that occurred, has sought to convert a claim for non-deductible asset loss to a deductible loss of shares, in that this is unacceptable for tax purposes due to procedure that was undertaken, in that this resulted in the claimant's claim in the company being considered genuinely worthless at the time of conversion. Reference is made to TfS 1995.540 National Tax Tribunal.

The claimant's attorney has alleged that the National Tax Tribunal should approve share losses of DKK 1,467,926, as stated in claimant's self-declaration.

In support of this, he has i.a., argued that the losses for shares owned less than and more than three years should be treated the same, with a reference to TfS 1996.654 H. He has further stated i.a., that there is no basis for overriding the cash based and registered capital increase and to consider this as having occurred by debt conversion, in that the company did not repay until December 28, i.e., three months after the decision to make a capital increase to settle the company's debt to the shareholders had been made, and in that the Ministry of Taxation has affirmatively accepted this in a similar case before the Eastern High Court, cf. TfS 1997.242, comments in TfS 1997.249.

The National Tax Tribunal states:

In reference to the Ministry of Taxation's affirmative acceptance in TfS 1997.242 ØLD, comments in TfS 1997.249, in a case, which in principle concerns the same issue as the present one, the National Tax Tribunal finds that there is no basis for considering claimant as having made a cash-based capital increase as this in fact was really a debt conversion.

Regarding the calculation of the loss on the shares in F2, the court must initially note that the calculation takes place in accordance with the Danish Capital Gains Tax Act § 6, cf. § 4, with regard to the shares owned for less than three years, however, cf., the Danish Capital Gains Tax Act § 2, para. 3, point 2, apply which shows that these were unlisted shares that were disposed of on November 18, 1993, or later, cf., Law no. 1117 of December 22, 1993,

§ 2, no. 1, cf., § 16. This means, i.a., that the capital gains statement, which determines both the acquisition, and the disposal sums takes place according to the average cost method.

Furthermore, the court must note that TfS 1996.654 H, which was referenced by the attorney, relates to the processing of shares acquired by exercising allotted share rights and subscription rights, cf. the former the Danish Capital Gains Tax Act § 6, para. 8, for the year in question, the Danish Capital Gains Tax Act § 6, para. 5, and § 5, para. 3. The shares in F2 that the claimant bought from his brother and F1 Ltd., by the agreement of September 1, 1994, for the total nominal amount DKK 34,000 is not covered by these provisions. On the other hand, it is assumed that the claimant's acquisition of the nominal amount DKK 620 by the capital increase on September 30, 1994, has occurred as a result of the exercise of an allocated subscription right, cf., 6, para. 5. These shares worth the nominal amount DKK 620 shares must be distributed proportionally to the shares that claimant owned for more and less than three years, i.e., the nominal amount DKK 22,000, and nominal amount DKK 34,000, respectively, cf. the Danish Capital Gains Tax Act § 6, para. 5.

The claimant's loss on shares owned for less than three years accordingly amounts to DKK 891,230, cf., the Danish Capital Gains Tax Act § 6, which can be set off and carried forward as gains for similar securities, cf. the Danish Capital Gains Tax Act § 2, para. 2. On the other hand, for shares owned more than three years, the claimant has not suffered a deductible loss, in that the loss is limited due to the claimant being a minority shareholder in F2 on May 18, 1993, cf. Law no. 421 § 19, para. 3, point 3. Following the information regarding F2's financial circumstances, the court has estimated the market value of the claimant's shares in the company at DKK 0 as of May 19, 1993.

The appealed assessment is amended accordingly.

Accordingly, it is decided:

| The 1994 income year | | |
|---|---|---|
| Share income | | |
| Non-approved deduction for self-declared share loss, DKK 1,467,926 | | Upheld. |
| The income that was simultaneously increased with calculated gains for shares owned more than 3 years at DKK 33,912 is reduced to | | DKK 0 |
| Capital income | | |
| The income that was simultaneously increased with calculated gains for shares owned less than 3 years at DKK 53,364 is reduced to | | DKK 0 |
| Instead, the claimant has a carry-forward loss for shares owned for less than 3 years, cf., the Danish Capital Gains Tax Act § 2, para. 2, which amount to | | DKK 891,230 |

..."

On August 27, 1997, the National Tax Tribunal issued a corresponding ruling regarding the determination of the complainant K2's income for the income year 1994. The actual circumstances of K2's acquisition and sale of the shares in F2 Ltd., conform with the description of the circumstances for K1 in the National Tax Tribunal ruling. The judgment concerning K1 contains a closer account of the extent to which K2 acquired and sold the shares as well as the subsequent distribution of the paid-in capital.

The National Tax Tribunal ruling concerning K2, showed that on December 31, 1993, K2 had a receivable of DKK 963,588 in F2 Ltd., that K2 paid-in DKK 988,000 as a result of the capital increase with value date of October 31, 1994, that the amount was financed by borrowing from K2's financial institution, and that F2 Ltd. paid DKK 963,588 for K2's receivable with value date of December 20, 1994.

The National Tax Tribunal ruling regarding K2 also shows:

"...

The complaint concerns the income calculation for the following point:

| The 1994 income year | | |
|---|---|---|
| Share income | | |
| Non-approved deduction for self-declared share loss | | DKK 909,074 |
| The income is simultaneously increased for shares owned more than 3 years | | DKK 28,485 |
| Capital income | | |
| The income is simultaneously increased for shares owned less than 3 years | | DKK 16,029 |
| ... | | |
| The claimant has by filing his self-declaration for the 1994 income year deducted a loss of DKK 909,074 from his F2 share income | | |
| The self-declared loss thus shows: | | |
| Purchase of shares July 1, 1990, nominal value DKK 22,000 at a price of 100 | | DKK 22,000 |
| Purchase of shares September 1, 1994, nominal value DKK 12,000 at a price of 0 | | DKK 0 |
| Share increase October 31, 1994, nominal value DKK 380 at a price of 260,000 | | DKK 988,000 |
| Total acquisition sum | | DKK 1,010,000 |
| Total disposition sum | | DKK 100,926 |
| Total loss | | DKK 909,074 |

At the time of the appeal of the assessment, the local authorities had not approved the self-declared share loss of DKK 909,074. The authorities have instead increased the claimant's share income by DKK 28,485 for shares owned more than 3 years and increased the claimant's capital income by DKK 16,029 for shares owned less than 3 years. Reference is made to the Danish Capital Gains Tax Act §§ 2, 4 and 5.

| The authorities' capital gains statement shows the following: | | |
|---|---|---|
| Purchase of shares July 1, 1990, nominal value of 22,000 for a price of 100 | | DKK 22,000 |

| | |
|---|---:|
| Purchase of shares September 1, 1994, nominal value of 12,000 for a price of 0 | DKK 0 |
| Capital increase October 31, 1994, nominal value of DKK 380 for the paid amount, less the claimant's receivable, which was redeemed (DKK 988,000 - DKK 953,588) | DKK 34,412 |
| Total acquisition sum for all shares | DKK 56,412 |
| Total disposition price | DKK 100,926 |
| Profit | DKK 44,514 |
| that is broken down as such: | |
| For shares that are owned <u>less</u> than 3 years: | |
| 12,380/34,380 x DKK 44,514 | DKK 16,029 |
| taxed as income from shares. | |
| For shares owned <u>more</u> than 3 years: | |
| 22,000/34,380 x DKK 44,514 | DKK 28,485 |
| Taxed as share income | |

...

The claimant's attorney has alleged that the National Tax Tribunal should approve the share losses of DKK 909,074, as stated in the claimant's self-declaration.

..."

Apart from the differences that follow from the fact that the claimants did not own the same number of shares in F2 Ltd., the National Tax Tribunal's premise in case about K2 is the same as the premise in the case about K1.

The conclusion of the judgment is as follows:

| | |
|---|---:|
| "The 1994 income year | |
| Share income | |
| Non-approved deduction for self-declared share loss, | Upheld. |
| The income that was simultaneously increased with calculated gains for shares owned more than 3 years at DKK 28,485 is reduced to | DKK 0 |

| Capital income | | |
|---|---|---|
| The income that was simultaneously increased with calculated gains for shares owned less than 3 years at DKK 16,029 is reduced to | | DKK 0 |
| Instead, the claimant has a carry-forward loss for shares owned for less than 3 years, cf. the Danish Capital Gains Tax Act § 2, para. 2, which amount to | | DKK 320,846 |

..."

## The claims of the parties

In this case, which was brought on November 26, 1997, the claimants have primarily claimed that the defendant, the Ministry of Taxation, is required to acknowledge that the claimant K1 can deduct share losses of DKK 1,467,926 in the calculation of share income for the 1994 income year and that the claimant K2 can deduct share losses of DKK 909,074 in the calculation of share income for the 1994 income year. In the alternative, the complainants have claimed that their tax assessments for the 1994 income year be referred for reconsideration by the tax authorities.

The defendant has filed a claim for dismissal.

## The arguments of the parties

In support of their primary claim, the claimants allege that the claimants have calculated the loss on their shares in F2 Ltd. correctly, as the shares have been owned for more than three years for the purposes of taxation, so that they must be taxed according to the Danish Capital Gains Tax Act § 4, para. 4, cf., the Danish Personal Income Tax Act § 4a, para. 1, no. 4. There is no legal basis for the breakdown made by tax authorities for a total disposition of the shares. The claimants' acquisition of shares on September 1, 1994, is of no independent significance since the acquisition took place at a price of 0 and as the sellers had no interest in the company. The claimants acquired a pre-emptive right to the total capital increase already at the company's incorporation in 1990, and the shares that they acquired on September 30, 1994, must, pursuant to the Danish Capital Gains Tax Act, § 6 para. 4, be considered to have been acquired at the same time as the initial authorized shares in 1990. It should be noted that even before the acquisition of the shares on September 1, 1994, the claimants jointly owned more than 50% of the shares and thus had the possibility of deciding the capital increase.

If the National Tribunal does not find that all the shares were acquired for the purposes of taxation at the time of incorporation in 1990, a separate profit calculation should be made for the shares acquired on September 1, 1994. If so, the case must be referred back to the tax authorities for reconsideration. Furthermore, the case must be referred back if the National Tribunal finds that § 19, para. 3, in Law no. 421 of June 25, 1993, can apply in this case. Since the defendant lacks legal basis for the division of the shares, it is disputed that this transitional rule is important.

However, this can only apply to the shares distributed at formation, since the shares acquired through the capital increase were issued by virtue of a subscription right, which was not exercised until after May 18, 1993. The claimants agree that the market value of the shares on May 19, 1992, was 0.

In support of its claim for dismissal, the defendant alleges that the National Tax Tribunal's calculation of the claimants' share income for 1994 is correct and that the claimants' argument that the ownership period exceeds 3 years for all the disposed shares is without legal basis. The general rules of the law on obligations show that "acquirement" in the Danish Capital Gains Tax Act takes place at the time of transfer, and it does not matter whether the transfer on September 1, 1994, which occurred by signing fund notes, took place at a price of 0.

Since the ownership period is less than three years for the portion of the complainants' shares that were acquired on September 1, 1994, the shares issued on September 30, 1994, must be distributed in proportion to the initially authorized shares acquired on July 1, 1990, and September 1, 1994, respectively, cf., the Danish Capital Gains Tax Act § 6 para. 4. In the capital gains statement relating to the initially authorized shares acquired in 1990, the market value of the shares on May 19, 1993, must be assumed to have been 0, as this is within the meaning of the transitional rule in § 19, para. 3 of the aforementioned statute. In accordance with the result of the National Tax Court's rulings, the overall calculation means that the complainants can neither deduct loss nor be taxed for gains relating to the shares acquired in 1990.

Prior instance: : Western High Court Judgment of November 25, 1999, Section 6, B-2838-97 - Skat.dk
5/23/22, 4:08 PM
Case 1:18-md-02865-LAK   Document 1073-9   Filed 06/24/24   Page 10 of 18

## The reasoning and conclusion

The Danish Capital Gains Tax Act's rules on the time of share acquisition must - in accordance with the law on obligations- be understood as meaning that the time of acquisition is the legal transfer of ownership by transfer or other means.

The complainants' acquisition of shares in F2 Ltd. on September 1, 1994, occurred in accordance with the issued fund notes, which were signed by both the complainants and the sellers, and it was at this very moment that the complainants first acquired ownership of the shares in question. The fact that the transfers took place at a price of 0 is irrelevant, and the complainants' acquisition date for these shares is thus September 1, 1994. The shares issued at the capital increase on September 30, 1994, must, pursuant to the Danish Capital Gains Taxation Act, § 6, para. 4, be considered acquired at the same time as the initially authorized shares. The initially authorized shares were acquired at the company's incorporation on July 1, 1990, and at the acquisition on September 1, 1994, respectively, and the calculation of the acquisition date for shares that were newly subscribed on September 30, 1994, must accordingly be proportionally distributed in accordance with the National Tax Tribunal's rulings. Accordingly, since the complainants have not shown circumstances that could result in the case being referred as was alternatively alleged, the National Tribunal upholds the defendant's claim for dismissal.

## The judgment of the Court:

The claim against the defendant, the Ministry of Taxation is dismissed.

The complainants K1 and K2, shall jointly and severally pay legal costs of DKK 30,000 to the defendant.

The awarded legal costs shall be paid within 14 days.

# Aktieavancebeskatning

**Tidligere instans: Vestre Landsrets dom af 25. november 1999, 6. afdeling, B-2838-97**

**Vestre Landsrets dom**
af 25. november 1999
6. afdeling, B-2838-97

## Parter:

K1
og
K2
(advokat A1, K-by)
mod
Skatteministeriet
(Kammeradvokaten)

## Afsagt af dommerne:

3 dommere

Den 27. august 1997 afsagde Landsskatteretten følgende kendelse vedrørende fastsættelsen af sagsøgeren K1s indkomst for indkomståret 1994:

"...

Klagen vedrører opgørelsen af indkomsten på følgende punkt:

| Indkomståret 1994 | | |
|---|---|---|
| Aktieindkomst | | |
| Ikke godkendt fradrag for selvangivet aktietab | | 1.467.926 kr. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år | | 33.912 kr. |
| Kapitalindkomst | | |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år | | 53.364 kr. |

Klageren stiftede sammen med K2, K3 og F1 ApS den 1. juli 1990 F2 ApS (herefter benævnt "F2"). K3 og K2 er klagerens brødre. F1 ApS var ejet af brødrene med 1/3 hver.

Indskudskapitalen i F2 var nom. 90.000 kr. og den fordeltes med nom. 24.000 kr. til F1 ApS og nom. 22.000 kr. til de tre brødre, idet kapitalen blev indbetalt til kurs 100.

Det fremgår af fremlagt balance for F2 pr. 31. december 1993, at selskabets egenkapital pr. 31. december 1992 havde været negativ med 1.644.685 kr. og pr. 31. december 1993 var negativ med 2.794.784 kr.

Det er samtidig oplyst, at klageren pr. 31. december 1993 havde et tilgodehavende på F2 på 1.555.202 kr.

Den 1. september 1994 overdrog K3 nom. 10.000 kr. af sine anparter til klageren, medens de resterende nom. 12.000 kr. af anparterne blev afstået til K2. F1 ApS overdrog samtidig sine anparter i F2, nom. 24.000 kr., til klageren. Alle anparterne blev overdraget til kurs 0.

Den 30. september 1994 afholdtes ekstraordinær generalforsamling i F2, hvorved selskabets kapital forhøjedes med nom. 1.000 kr. Forhøjelsen skete til kurs 260.000 og skulle efter det vedtagne ske ved kontant indbetaling af således i alt 2.600.000 kr. De hidtidige anpartshavere, dvs. klageren og K2, havde forholdsmæssig fortegningsret til anparterne og tegnede således nom.:

| | |
|---|---|
| Klageren: | 620 kr. |
| K2: | 380 kr. |

Efter kapitaludvidelsen var F2s indskudskapital fordelt således:

| | |
|---|---|
| Klageren: | 56.620 kr. |
| K2: | 34.380 kr. |

Klageren skulle således som følge af kapitaludvidelsen indbetale 1.612.000 kr. Indbetalingen blev foretaget med valør den 31. oktober 1994 og blev financieret med klagerens låneoptagelse hos sit pengeinstitut.

Med valør den 20. december 1994 betalte F2 klagerens tilgodehavende, 1.555.202 kr. til klageren.

Ved aftale af 28. december 1994 solgte klageren og K2 samtlige deres anparter i F2 til K2 A/S. K2 A/S var et selskab ejet af de tre brødre samt deres fader, K4. Overdragelsessummen var aftalt til 267.000 kr. og fordeltes med 166.074 kr. til klageren og 100.926 kr. til K2.

Klageren har ved indgivelsen af sin selvangivelse for indkomståret 1994 fratrukket tab i sin aktieindkomst vedrørende F2 på 1.467.926 kr.

Det selvangivne tab fremkommer således:

| | | |
|---|---|---|
| Køb anparter 1/7 1990, nom. 22.000 kr. a kurs 100 | | 22.000 kr. |
| Køb anparter 1/9 1994, nom. 34.000 kr. a kurs 0 | | 0 kr. |
| Anpartsudv. 31/10 1994, nom. 620 kr. a kurs 260.000 | | 1.612.000 kr. |
| Anskaffelsessum i alt | | 1.634.000 kr. |
| Salgssum i alt | | 166.074 kr. |
| Tab i alt | | 1.467.926 kr. |

De stedlige skattemyndigheder har ved den påklagede ansættelse ikke godkendt det selvangivne aktietab på 1.467.926 kr. Myndighederne har i stedet forhøjet klagerens aktieindkomst med 33.912 kr. vedrørende anparter ejet over tre år og forhøjet klagerens kapitalindkomst med 53.364 kr. vedrørende anparter ejet under tre år. Der er henvist til ABL §§ 2, 4 og 5.

| |
|---|
| Myndighedernes avanceopgørelse fremkommer således: |

| | |
|---|---:|
| Køb af anparter 1/7 1990, nom. 22.000 a kurs 100 | 22.000 kr. |
| Køb af anparter 1/9 1994, nom. 34.000 a kurs 0 | 0 kr. |
| Kapitaludv. 30/10 1994, nom. 620 kr. til det indbetalte beløb med fradrag af klagerens tilgodehavende, der indfries (1.612.000 kr. - 1.555.202 kr.) | 56.798 kr. |
| Anskaffelsessum for anparter i alt | 78.798 kr. |
| Salgspris i alt | 166.074 kr. |
| Fortjeneste | 87.276 kr. |
| som fordeles således: | |
| For anparter ejet under 3 år: 34.620/56.620 x 87.276 kr. | 53.364 kr. |
| beskattes som kapitalindkomst. | |
| For anparter ejet over 3 år: 22.000/56.620 x 87.276 kr. | 33.912 kr. |
| beskattes som aktieindkomst. | |

Myndighederne har bl.a. anført, at den foretagne kapitaludvidelse ikke kan anses for foretaget kontant, men reelt må anses for foretaget som en gældskonvertering, at klageren ved den skete fremgangsmåde har søgt at konvertere et ikke-fradragsberettiget formuetab på en fordring til et fradragsberettiget tab på anparter, at man ikke skattemæssigt skal acceptere den foretagne fremgangsmåde, at klagerens fordring i selskabet må anses at have været reelt værdiløs på konverteringstidspunktet. Der er henvist til TfS 1995.540 Lsr.

Klagerens advokat har over for Landsskatteretten nedlagt påstand om, at tab på anparterne, 1.467.926 kr., i klagerens aktieindkomst godkendes som selvangivet.

Han har til støtte herfor bl.a. gjort gældende, at tabet på anparter ejet under og over tre år skal behandles ens, hvorved er henvist til TfS 1996.654 H. Det er videre bl.a. anført, at der ikke er grundlag for at tilsidesætte den kontant foretagne og registrerede kapitalforhøjelse og anse den for sket ved gældskonvertering, at selskabet først den 28. december, dvs. ca. 3 måneder efter beslutningen om kapitaludvidelsen foretager indfrielse af selskabets gæld til anpartshaverne, at Skatteministeriet i en tilsvarende sag for Østre Landsret har taget bekræftende til genmæle, jf. TfS 1997.242, kommenteret i TfS 1997.249.

Landsskatteretten skal udtale:

Landsskatteretten finder med henvisning til, at Skatteministeriet har taget bekræftende til genmæle i TfS 1997.242 ØLD, kommenteret i TfS 1997.249, i en sag, der principielt vedrører samme problemstilling som den foreliggende, at der ikke er grundlag for at anse den af klageren som kontant betegnende foretagne kapitalforhøjelse som reelt foretaget ved gældskonvertering.

Retten skal vedrørende opgørelsen af tabet på anparterne i F2 indledningsvist bemærke, at opgørelsen finder sted i henhold til ABL § 6, jf. § 4, f.s.v.a. anparterne ejet under tre år dog jf. ABL § 2, stk. 3, 2. pkt., som følge af, at der er tale om unoterede anparter afstået 18. november 1993 eller senere, jf. lov

nr. 1117 af 22. december 1993, § 2, nr. 1, jf. § 16. Dette medfører bl.a., at avanceopgørelsen med fastsættelse af såvel anskaffelses- som afståelsessummer finder sted efter gennemsnitsmetoden.

Retten skal videre bemærke, at TfS 1996.654 H, hvortil advokaten har henvist vedrører behandlingen af aktier, der er erhvervet ved udnyttelse af tildelte aktieretter og tegningsretter, jf. tidligere ABL § 6, stk. 8, i det omhandlede år ABL §§ 6, stk. 5, og 5, stk. 3. De anparter i F2 som klageren ved aftaler af 1. september 1994 købte af sin broder og F1 ApS, i alt nom. 34.000 kr., er ikke omfattet af disse bestemmelser. Det lægges derimod til grund, at klagerens erhvervelse af nom. 620 kr. ved kapitaludvidelsen den 30. september 1994 er sket som følge af udnyttelse af en tildelt tegningsret, jf. 6, stk. 5. Disse nom. 620 kr. anparter skal forholdsmæssigt fordeles på de af klagerens anparter, der er ejet over og under 3 år, dvs. på nom. 22.000 kr. hhv. på nom. 34.000 kr., jf. ABL § 6, stk. 5.

Klagerens tab på anparter ejet under tre år udgør herefter 891.230 kr., jf. ABL § 6, der kan modregnes og fremføres i avancer på tilsvarende papirer, jf. ABL § 2, stk. 2. På anparter ejet over tre år har klageren derimod ikke lidt et fradragsberettiget tab, idet der sker begrænsning af tabet som følge af, at klageren den 18. maj 1993 var mindretalsaktionær i F2, jf. lov nr. 421 § 19, stk. 3, 3. pkt. Retten har herved efter oplysningerne om F2s økonomiske forhold skønsmæssigt ansat handelsværdien af klagerens anparter i selskabet den 19. maj 1993 til 0 kr.

Den påklagede ansættelse ændres i overensstemmelse hermed.

Herefter bestemmes:

| Indkomståret 1994 | | |
|---|---|---|
| Aktieindkomst | | |
| Ikke godkendt fradrag for selvangivet aktietab, 1.467.926 kr. | | Stadfæstes. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år med 33.912 kr., nedsættes til | | 0 kr. |
| Kapitalindkomst | | |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år med 53.364 kr., nedsættes til | | 0 kr. |
| I stedet har klageren et fremførselsberettiget tab på anparter ejet under 3 år, jf. ABL § 2, stk. 2, der udgør | | 891.230 kr. |

..."

Den 27. august 1997 afsagde Landsskatteretten en tilsvarende kendelse vedrørende fastsættelsen af sagsøgeren K2s indkomst for indkomståret 1994. De faktiske forhold ved K2s erhvervelse og salg af anparter i F2 ApS svarer til omstændighederne beskrevet i landsskatteretskendelsen vedrørende K1. Der er i kendelsen vedrørende K1 nærmere redegjort for, i hvilket omfang K2 har erhvervet og solgt anparter samt den efterfølgende fordeling af indskudskapitalen.

I landsskatteretskendelsen vedrørende K2 er det oplyst, at K2 den 31. december 1993 havde et tilgodehavende hos F2 ApS på 963.588 kr., at K2 som følge af kapitaludvidelsen med valør den 31. oktober 1994 indbetalte 988.000 kr., at beløbet blev finansieret med låneoptagelse i K2s pengeinstitut, og at F2 ApS med valør den 20. december 1994 betalte K2s tilgodehavende med 963.588 kr.

Af landsskatteretskendelsen vedrørende K2 fremgår i øvrigt:

"...

Klagen vedrører opgørelsen af indkomsten på følgende punkt:

| | | |
|---|---|---|
| Indkomståret 1994 | | |
| Aktieindkomst | | |
| Ikke godkendt fradrag for selvangivet aktietab | | 909.074 kr. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år | | 28.485 kr. |
| Kapitalindkomst | | |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år | | 16.029 kr. |
| ... | | |
| Klageren har ved indgivelsen af sin selvangivelse for indkomståret 1994 fratrukket tab i sin aktieindkomst vedrørende F2 på 909.074 kr. | | |
| Det selvangivne tab fremkommer således: | | |
| Køb anparter 1/7 1990, nom. 22.000 kr. a kurs 100 | | 22.000 kr. |
| Køb anparter 1/9 1994, nom. 12.000 kr. a kurs 0 | | 0 kr. |
| Anpartsudv. 31/10 1994, nom. 380 kr. a kurs 260.000 | | 988.000 kr. |
| Anskaffelsessum i alt | | 1.010.000 kr. |
| Salgssum i alt | | 100.926 kr. |
| Tab i alt | | 909.074 kr. |

De stedlige skattemyndigheder har ved den påklagede ansættelse ikke godkendt det selvangivne aktietab på 909.074 kr. Myndighederne har i stedet forhøjet klagerens aktieindkomst med 28.485 kr. vedrørende anparter ejet over tre år og forhøjet klagerens kapitalindkomst med 16.029 kr. vedrørende anparter ejet under tre år. Der er henvist til ABL §§ 2, 4 og 5.

| | | |
|---|---|---|
| Myndighedernes avanceopgørelse fremkommer således: | | |
| Køb af anparter 1/7 1990, nom. 22.000 a kurs 100 | | 22.000 kr. |

| | |
|---|---:|
| Køb af anparter 1/9 1994, nom. 12.000 a kurs 0 | 0 kr. |
| Kapitaludv. 31/10 1994, nom. 380 kr. til det indbetalte beløb med fradrag af klagerens tilgodehavende, der indfries (988.000 kr. - 953.588 kr.) | 34.412 kr. |
| Anskaffelsessum for anparter i alt | 56.412 kr. |
| Salgspris i alt | 100.926 kr. |
| Fortjeneste | 44.514 kr. |
| som fordeles således: | |
| For anparter ejet under 3 år: | |
| 12.380/34.380 x 44.514 kr. | 16.029 kr. |
| der beskattes som aktieindkomst. | |
| For anparter ejet over 3 år: | |
| 22.000/34.380 x 44.514 kr. | 28.485 kr. |
| der beskattes som aktieindkomst. | |

...

Klagerens advokat har over for Landsskatteretten nedlagt påstand om, at tab på anparterne, 909.074 kr., i klagerens aktieindkomst godkendes som selvangivet.

..."

Bortset fra de forskelle, der følger af, at sagsøgerne ikke ejede lige mange anparter i F2 ApS, er Landsskatterettens præmisser i sagen vedrørende K2 identiske med præmisserne i sagen vedrørende K1.

Kendelsens konklusion er sålydende:

| | |
|---|---:|
| "Indkomståret 1994 | |
| Aktieindkomst | |
| Ikke godkendt fradrag for selvangivet aktietab, | Stadfæstes. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år med 28.485 kr., nedsættes til | 0 kr. |

| Kapitalindkomst | | |
|---|---|---|
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år med 16.029 kr., nedsættes til | | 0 kr. |
| I stedet har klageren et fremførselsberettiget tab på anparter ejet under 3 år, jf. ABL § 2, stk. 2, der udgør | | 320.846 kr. |

..."

## Parternes påstande

Under denne sag, der er anlagt den 26. november 1997, har sagsøgerne principalt påstået sagsøgte, Skatteministeriet, tilpligtet at anerkende, at sagsøgeren K1 ved opgørelsen af aktieindkomst for indkomståret 1994 kan fradrage aktietab med 1.467.926 kr. og at sagsøgeren K2 ved opgørelsen af aktieindkomst for indkomståret 1994 kan fradrage aktietab med 909.074 kr. Sagsøgerne har subsidiært nedlagt påstand om, at deres skatteansættelser for indkomståret 1994 hjemvises til fornyet behandling ved ligningsmyndighederne.

Sagsøgte har påstået frifindelse.

## Parternes argumenter

Sagsøgerne har til støtte for deres principale påstand gjort gældende, at sagsøgerne har opgjort tabet på deres anparter i F2 ApS korrekt, da anparterne skattemæssigt har været ejet i mere end tre år, således at beskatningen skal ske efter aktieavancebeskatningslovens § 4, stk. 4, jf. personskattelovens § 4a, stk. 1, nr. 4. Der er ikke hjemmel til den af skattemyndighederne foretagne opdeling ved en samlet afståelse af anparter. Sagsøgernes erhvervelse af anparter den 1. september 1994 er uden selvstændig betydning, da erhvervelsen skete til kurs 0, og da sælgerne ingen interesse havde i selskabet. Sagsøgerne opnåede fortegningsret til den samlede kapitaludvidelse allerede ved selskabets stiftelse i 1990, og de anparter, de erhvervede den 30. september 1994, skal i medfør af aktieavancebeskatningslovens § 6, stk. 4, anses for erhvervet samtidig med moderanparterne i 1990. Det bemærkes, at sagsøgerne allerede inden erhvervelsen af anparterne den 1. september 1994 tilsammen ejede mere end 50 % af anparterne og således havde mulighed for at træffe bestemmelse om kapitalforhøjelsen.

Såfremt landsretten ikke finder, at alle anparterne i skattemæssig henseende er erhvervet ved stiftelsen i 1990, bør der foretages en særskilt avanceberegning af anparterne erhvervet den 1. september 1994. I så fald skal sagen hjemvises til fornyet behandling ved ligningsmyndighederne. Endvidere skal sagen hjemvises, hvis landsretten finder, at § 19, stk. 3, i lov nr. 421 af 25. juni 1993 kan anvendes i nærværende sag. Da sagsøgte mangler hjemmel til den foretagne fordeling af anparter, bestrides det, at denne overgangsregel har betydning.

Dette må i givet fald dog alene gælde de ved stiftelsen fordelte anparter, da anparterne erhvervet ved kapitalforhøjelsen blev udstedt i kraft af en tegningsret, der først blev udnyttet efter den 18. maj 1993. Sagsøgerne er enige i, at anparternes handelsværdi den 19. maj 1992 var 0.

Sagsøgte har til støtte for sin påstand om frifindelse gjort gældende, at Landsskatterettens opgørelse af sagsøgernes aktieindkomst for 1994 er korrekt, og at sagsøgernes anbringende om, at ejertiden overstiger 3 år for alle de solgte anparter er uden hjemmel i loven. Det følger af de almindelige obligationsretlige regler, at "erhvervelse" i aktieavancebeskatningsloven sker på overdragelsestidspunktet, og det har ingen betydning, om overdragelsen den 1. september 1994, der skete ved underskrift af fondsnotaer, er sket til kurs 0.

Da ejertiden er mindre end tre år for den del af sagsøgernes anparter, der er erhvervet den 1. september 1994, skal der foretages en forholdsmæssig fordeling af de den 30. september 1994 udstedte anparter i forhold til moderanparterne erhvervet henholdsvis den 1. juli 1990 og 1. september 1994, jf. aktieavancebeskatningslovens § 6, stk. 4. Ved avanceopgørelsen vedrørende moderanparterne erhvervet i 1990, får overgangsreglen i § 19, stk. 3, i ovennævnte lov betydning, idet anparternes handelsværdi den 19. maj 1993 må antages at have været 0. En samlet beregning fører til, at sagsøgerne - i overensstemmelse med resultatet i Landsskatterettens kendelser - hverken kan fradrage et tab eller skal beskattes af en gevinst for så vidt angår anparterne erhvervet i 1990.

## Begrundelse og konklusion

Aktieavancebeskatningslovens regler om tidspunkt for erhvervelse af anparter må - i overensstemmelse med de obligationsretlige regler - forstås således, at erhvervelsestidspunktet er ejendomsrettens overgang ved overdragelse eller på anden måde.

Sagsøgernes erhvervelse af anparter i F2 ApS den 1. september 1994 skete i overensstemmelse med udstedte fondsnotaer, der var underskrevet af såvel sagsøgerne som sælgerne, og sagsøgerne opnåede først på dette tidspunkt ejendomsret til de omhandlede anparter. Det findes at være uden betydning, at overdragelserne er sket til kurs 0, og sagsøgernes erhvervelsestidspunkt for disse anparter er således den 1. september 1994. De anparter, der blev udstedt ved kapitalforhøjelsen den 30. september 1994 skal i medfør af aktieavancebeskatningslovens § 6, stk. 4, anses for erhvervet samtidig med moderanparterne. Moderanparterne er anskaffet henholdsvis ved selskabets stiftelse den 1. juli 1990 og ved erhvervelsen den 1. september 1994, og de den 30. september 1994 nytegnede anparter skal herefter med hensyn til beregningen af anskaffelsestidspunktet fordeles forholdsmæssigt som sket ved Landsskatterettens kendelser. Herefter, og idet sagsøgerne ikke har anført omstændigheder, der kan begrunde, at sagen hjemvises som subsidiært påstået, tager landsretten sagsøgtes påstand om frifindelse til følge.

## Thi kendes for ret:

Sagsøgte, Skatteministeriet, frifindes.

Sagsøgerne, K1 og K2, skal i sagsomkostninger en for begge og begge for en betale til sagsøgte 30.000 kr.

De idømte sagsomkostninger skal betales inden 14 dage.