# MEMO ENDORSED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___8/9/24___

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

MASTER DOCKET

18-md-02865-LAK

This document relates to:    The cases
identified in
Appendix A

## NOTICE OF DEFENDANT'S MOTION TO EXCLUDE THE PROPOSED EXPERT REPORTS, OPINIONS, AND TESTIMONY OF BRUCE DUBINSKY

**PLEASE TAKE NOTICE**, that upon the accompanying Declaration of Michael M. Rosensaft dated June 21, 2024, and the exhibits attached thereto; that upon the accompanying Memorandum of Law, dated June 21, 2024; and upon all prior pleadings and proceedings had herein, Defendants, through the undersigned counsel, will move this Court before the Honorable Lewis A. Kaplan at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, Courtroom 21B, at a date and time to be determined by the court, for an order excluding the testimony of Bruce Dubinsky pursuant to Federal Rules of Evidence 702. Defendant respectfully requests oral argument regarding this motion.

Memorandum Endorsement    In re Customs and Tax Admin., Master Docket 18-md-2865 (LAK)

        Plaintiff retained accountant Bruce Dubinsky as a proposed expert witness. Mr. Dubinsky has testified in scores of cases as an expert in forensic accounting and fraud investigations, among other areas, and he has worked on "some of the largest fraud cases in the world."[1]  Mr. Dubinsky examined the trading records and account statements of the Solo custodians and certain defendants, among other materials, to analyze defendants' trading activity.

        Defendants move first to preclude Mr. Dubinsky from testifying "that the Pension Plans did not own Danish securities" because that determination is one that "the jury must make . . . after being instructed in Danish law" by the Court.[2]  But an expert witness's "opinion is not objectionable just because it embraces an ultimate issue" to be decided by the jury.[3]  And Mr. Dubinsky would not purport to provide legal instructions. Rather, his report concludes that the shares in question did not exist and, in consequence, that the defendants could not have owned them as an accounting matter.[4]  These *factual* conclusions are appropriate subjects for expert testimony, and they would not intrude on the Court's role of instructing the jury as to the law. Should it prove necessary at trial, the Court would be prepared to instruct the jury that they are not to construe anything said by Mr. Dubinsky as a definition of "ownership" under Danish or any other law.

        Next, defendants move to exclude Mr. Dubinsky's proposed testimony pertaining to "liquidity, creditworthiness, and secured lending agreements" because they "fall outside of his expertise."[5]  But they identify as problematic only one paragraph in Mr. Dubinsky's report.[6]  And that paragraph, which supports the report's conclusion that "[t]he Plans did not have sufficient capital, liquidity or access to real credit to complete the purported Solo Trades but for the circular nature of the structured scheme," is within Mr. Dubinsky's areas of expertise.[7]  Defendants' argument lacks merit.

---

[1]    Dkt 1093-1 (Dubinsky Report Part I) at ¶¶ 1–5.

[2]    Dkt 1064 (Def. Mem.) at 5.  As this Court recently explained, experts may not testify in the form of legal conclusions.  Dkt 1116 at 1.

[3]    Fed. R. Evid. 704(a).

[4]    Dkt 1093-2 (Dubinsky Report Part II) at ¶¶ 132–138.

[5]    Dkt 1064 (Def. Mem.) at 7–8 (cleaned up).

[6]    *Id*. at 8 (citing dkt 1093-5 (Dubinsky Report Part V) at ¶ 215).

[7]    Dkt 1093-1 (Dubinsky Report Part I) at ¶ 4 (noting Mr. Dubinsky's expertise in forensic accounting, fraud investigations, solvency, accounting malpractice, and investment advisory issues, among other relevant areas).

Defendants contend also that Mr. Dubinsky "does not have the training or qualifications to opine on the many parts of a complicated structured transaction."[8]  In support of this assertion, they (1) fault Mr. Dubinsky's report for failing to explain certain of his conclusions and (2) point out that Mr. Dubinsky "has never engaged in arbitrage trading" and "has no experience in arranging structured transactions."[9]  These alleged shortcomings may well be an appropriate subject of cross-examination, but they are not sufficient grounds to exclude the proposed testimony.[10]

Last, defendants contend that Mr. Dubinsky's proposed testimony should be excluded because it is based on unreliable data.  The data in question are purported trading records of Solo-related entities contained in the "Elysium Documents," which were recovered in Dubai pursuant to a search authorized by the Dubai International Financial Center courts.[11]  Federal Rule of Evidence 703 governs the sources of information on which experts may base their testimony.  In relevant part, it provides that the facts and data on which an expert bases an opinion "need not be admissible for the opinion to be admitted" "[i]f experts in the particular field would reasonably rely on those kinds of facts or data."[12]  It is the role of the trial court to resolve disputes over whether the expert's reliance on the disputed facts or data was reasonable.[13]

The Elysium Documents are sufficiently reliable.  At the outset, the Court notes that "[a]n expert who meets the test of Rule 702," as Mr. Dubinsky does, "is assumed to have the skill to properly evaluate the [source material], giving it probative force appropriate to the circumstances."[14]  The defendants' arguments, moreover, are misplaced insofar as they focus on the admissibility of the Elysium Documents under the business records exception to the rule against hearsay, an irrelevant inquiry under Rule 703.  Further, defendants' substantive argument against reliability — that there is "no reason to conclude that the Elysium Documents are business records

---

[8]

Dkt 1064 (Def. Mem.) at 12.

[9]

*Id*. at 12–13.

[10]

*See* dkt 1092 (Pl. Mem.) at 15–17.

[11]

Dkt 1092 (Pl. Mem.) at 4.

[12]

Fed. R. Evid. 703.

[13]

*See* Fed. R. Evid. 104(a); Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence Manual*, § 13.03[2][c] (Joseph M. McLaughlin, ed., 2020).

[14]

*United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993) (internal quotation marks omitted).

of the Solo Custodians" — is unpersuasive, at least in this context.[15] Most significantly, Sanjay Shah, who controlled the Solo custodians, testified in another proceeding that Elysium Global (Dubai) Ltd. — the records of which were contained in the Elysium Documents — formerly was known as Solo Capital (Dubai) Ltd.[16] What is more, as plaintiff points out, the authenticity of the Elysium Documents is bolstered by the fact that "many of the [Solo] trading records defendants produced in this litigation . . . are also among the records seized from the Elysium companies."[17] These indicia of reliability, among others marshaled by plaintiff, inform the Court's determination that the Elysium Documents are of the sort that a forensic accountant reasonably could rely upon.

The Court has considered carefully defendants' other arguments and finds that each lacks merit.

Defendants' motion is denied.

SO ORDERED.

Dated:        August 9, 2024

Lewis A. Kaplan
United States District Judge

---

[15]

Dkt 1064 (Def. Mem.) at 9.

[16]

Dkt 1093-42 (First Witness Statement of Sanjay Shah) at ¶¶ 217–218; dkt 1093-2 (Dubinsky Report Part II) at ¶ 141.

[17]

Dkt 1092 (Pl. Mem.) at 12; dkt 1093-52 (Trade Confirmation).